UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| CHRISTY WALKER-SCHAUT,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>LIDO LABS HOLDING COMPANY,<br><br>　　　　Defendant. | CASE NO. C23-5944 BHS<br><br>ORDER |

THIS MATTER is before the Court on defendant Lido Labs Holding Company's motion to dismiss, Dkt. 13.

Plaintiff Christy Walker-Schaut alleges that her[1] cell phone number is on the national Do Not Call Registry (DNCR) but that Lido Labs nevertheless unlawfully sent her 65 unsolicited "spam" texts promoting various commercial services under the guise of free assistance on various topics. She asserts that Lido Labs' text messages violated Washington's Commercial Electronic Mail Act (CEMA), RCW 19.190.060, and Federal

---

[1] Walker-Schaut's assertion that her attorneys have "dozens of other clients" with similar claims, Dkt. 16 at 1, *see also* Dkt. 1, is not yet relevant. This is a putative class action, but the motion to dismiss is aimed only at Walker-Schaut's own allegations.

Communications Commission (FCC) regulations promulgated under the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227. She asserts on her own behalf (and on behalf of four putative classes) four claims:

1. A CEMA claim. Walker-Schaut asserts that Lido Labs' text messages violated RCW 19.190.060 because she had not "clearly and affirmatively consented in advance" to receive them. She describes this as an "SMS" claim. Dkt. 1 at 13.

2. A DNCR claim. Walker-Schaut asserts that Lido Labs' text messages violated the TCPA and 47 C.F.R. § 64.1200(c)(2) by repeatedly texting a number on the DNCR. Dkt. 1 at 13.

3. A "failure to identify" claim. Walker-Schaut asserts that Lido Labs' text messages violated the TCPA and 47 C.F.R. § 64.1200(d)(4) by failing to identify the texts' sender or the person upon whose behalf the texts were sent. Dkt. 1 at 14.

4. An Automatic Telephone Dialing System (ATDS) claim. Walker-Schaut asserts that Lido Labs' text messages violated the TCPA and 47 C.F.R. § 64.1200(a)(1)-(2) because it used an ATDS to generate her cell phone number and to send text messages to it. Dkt. 1 at 14.

Lido Labs argues that each of Walker-Schaut's claims is incurably flawed, and asks the Court to dismiss her complaint with prejudice and without leave to amend. Dkts. 13 and 13-1.

The issues are addressed in turn.

|   |   |
|---|---|
| 1 | **DISCUSSION** |
| 2 | Dismissal under Fed. R. Civ. P. 12(b)(6) may be based on either the lack of a |
| 3 | cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal |
| 4 | theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A |
| 5 | plaintiff's complaint must allege facts to state a claim for relief that is plausible on its |
| 6 | face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has "facial plausibility" |
| 7 | when the party seeking relief "pleads factual content that allows the court to draw the |
| 8 | reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Although |
| 9 | the court must accept as true the complaint's well-pled facts, conclusory allegations of |
| 10 | law and unwarranted inferences will not defeat an otherwise proper 12(b)(6) motion to |
| 11 | dismiss. *Vasquez v. Los Angeles Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007); *Sprewell v.* |
| 12 | *Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "A plaintiff's obligation to |
| 13 | provide the grounds of his entitlement to relief requires more than labels and conclusions, |
| 14 | and a formulaic recitation of the elements of a cause of action will not do. Factual |
| 15 | allegations must be enough to raise a right to relief above the speculative level." *Bell Atl.* |
| 16 | *Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up). This requires a plaintiff to |
| 17 | plead "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, |
| 18 | 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). |
| 19 | On a 12(b)(6) motion, "a district court should grant leave to amend, even if no |
| 20 | request to amend the pleading was made, unless it determines that the pleading could not |
| 21 | possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe v. N. Cal.* |
| 22 | *Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990). However, where the facts are not in |

dispute, and the sole issue is whether there is liability as a matter of substantive law, the court may deny leave to amend. *Albrecht v. Lund*, 845 F.2d 193, 195–96 (9th Cir. 1988).

**A.    Walker-Schaut plausibly pled a CEMA claim, and she can plausibly plead a CPA claim.**

Lido Labs argues that Walker-Schaut's state law CEMA claim is fatally flawed for two reasons: she has not and cannot plausibly allege that Lido Labs sent her a "commercial text message," and, even if it did, CEMA does not provide a private right of action.

Walker-Schaut alleges that between May 22, 2023, and October 19, 2023, Lido Labs sent her 65 unsolicited text messages, like these:

> Christy Check out the new Utility Bill Relief Act! Enter your info here for Free Public Utility Assistance: 1rto.club/b/F6e:2X3JU Reply STOP to quit text
>
> Christy Are you in need of emergency funds? Claim your Free Personalized Financial Assistance program here: 1rto.club/b/FAw:2X3JU Reply STOP to quit text
>
> Christy Check out the Free Section 8 Assistance Guide. Click here to get info on Finding Affordable Housing! 1rto.club/b/FAv:2X3JU Reply STOP to quit text

Dkt. 1 at 3–4. Lido Labs argues that these text messages do not violate CEMA because they are not "commercial;" they facially do not promote the real property, goods, or services for sale or lease. Dkt. 13 at 5 (citing *Hickey v. Voxernet LLC*, 887 F. Supp. 2d 1125 (W.D. Wash. 2012)).

Walker-Schaut contends that Lido Labs obviously has incentives beyond giving away free informational guides to random people. Dkt. 16 at 6. She alleges and argues

that one clicking on the links included in Lido Labs' text messages ends up agreeing to receive—to "consent to," for TCPA and CEMA purposes—telephone calls or text messages for all sorts of commercial "services" that are *not* free: insurance, legal advice, debt relief, tax relief, lending, mass tort legal representation, and the like. *Id*. at 5–6 (citing Dkt. 1).

She argues that because CEMA's prohibitions on such communications are substantially similar to the TCPA's, judicial interpretations of the latter statute inform the Court's analysis of the former. *Id*. at 4. She argues that to determine whether a text is for a commercial purpose, a court must evaluate the "ultimate purpose" of the communication. *Id*. (citing *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 917 (9th Cir. 2012)). *Chesbro* explained:

> The FCC has determined that so-called "dual purpose" calls, those with both a customer service or informational component [and] a marketing component, are prohibited. . . . Neither the [TCPA] nor the regulations require an explicit mention of a good, product, or service where the implication is clear from the context. Any additional information provided in the calls does not inoculate them.

*Id*.[2]

Walker-Schaut argues that the FCC long ago expressly rejected Lido Labs' argument that texts are not commercial if they do not explicitly mention a good or service for sale: "If the call is intended to offer property, goods, or services for sale either during the call, or in the future (such as in response to a message that provides a toll-free

---

[2] Lido Labs' claim that Walker-Schaut's "dual purpose" argument is "not supported by any case law," Dkt. 23 at 4, is disproved by her citation to this authority.

ORDER - 5

number), that call is an advertisement." Dkt. 16 at 5 (citing *In Re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C.R. 14014, 14099 ¶ 142, 2003 WL 21517853 (2003)).

Lido Labs' primary authority, *Hickey*, involved a CEMA claim based on text messages providing a link to download a free "walkie talkie" app. 887 F. Supp. 2d at 1128. This District's Judge Marsha Pechman dismissed plaintiff Hickey's CEMA claim (with leave to amend) because he had not plausibly alleged that the unsolicited text was commercial; he did not allege that consumers paid money for the app. The Court rejected Hickey's claim that the download offer was "commercial" because it involved "intangible" consideration in the form of personal information or a future promise to pay to use the free app. *Id*. at 1132.

Four subsequent decisions in this District—two by Judge Pechman—have held that text messages that do not explicitly seek to sell a good or service may nevertheless be commercial under CEMA, if they are designed to "promote, or otherwise have the purpose of *promoting future sales* of some good or service." *Bottoms v. Block, Inc*., No. C23-1969 MJP, 2024 WL 1931690 at *6 (W.D. Wash., May 2, 2024) (emphasis added) (citing *Moore v. Robinhood Financial LLC*, No. C21-1571 BJR, 2022 WL 3082969, at *5 (W.D. Wash. Aug. 3, 2022)); *see also Wright v. Lyft, Inc*., No. C14-0421 MJP, 2016 WL 7971290, at *5 (W.D. Wash. Apr. 15, 2016) (text offering "free" app that promoted purchase of future services was commercial); *Gragg v. Orange Cab Co*., No. C12-0576 RSL, 2013 WL 195466, at *4 (W.D. Wash. Jan. 17, 2013) (same).

Under these well-reasoned decisions and Washington's CEMA, Walker-Schaut has plausibly alleged that the purpose of Lido Labs' texts was to promote the purchase of future services; she plausibly alleges she was confronted with offers to purchase such services when she clicked the embedded link, before she could access the "free" assistance touted in the text.

Lido Labs' motion to dismiss Walker-Schaut's CEMA claim on this basis is **DENIED**.

Lido Labs' claim that the RCW 19.190.040 does not itself provide a private right of action is correct, but that does not lead to the conclusion that Walker-Schaut's claim must be dismissed with prejudice. In response to Judge Pechman's certified questions in *Wright*, the Washington Supreme Court explained that RCW 19.190.040 does not create a private cause of action for damages. Instead, the statute's language indicates that it was the legislature's intent "for CEMA violations to be brought under the CPA [Washington's Consumer Protection Act]." *Wright v. Lyft, Inc.,* 189 Wn.2d 718, 726 (2017).

Walker-Schaut's first cause of action asserts a violation of CEMA, RCW 19.190.040, and seeks statutory damages under that statute. Dkt. 1 at 13. It references, but does not expressly assert a claim under, the CPA. *Id*. Lido Labs' motion to dismiss any CEMA claim not asserted under the CPA is **GRANTED**. Because Walker-Schaut can easily remedy this technical deficiency by asserting a CPA claim based on the CEMA violation, the dismissal is without prejudice and with leave to amend. She should file an amended complaint correcting this deficiency within 14 days.

**B.      Walker-Schaut has plausibly pled a DNCR claim under the TCPA.**

Lido Labs argues that Walker-Schaut's DNCR claim is fatally flawed because the FCC did not "expand" the TCPA's Do Not Call protections to include text messages until November 2023, after Lido Labs sent the text messages described in Walker-Schaut's complaint. Dkt. 13 at 10 (citing *In Re: Targeting and Eliminating Unlawful Text Messages*, Second Report and Order, FCC-CIRC23102-02, ¶25 (Nov. 22, 2023)). It suggests that before the FCC's November 2023 "clarification" it had no reason to believe that the DNCR applied to text messages as well as telephone calls. *Id*.

Lido Labs also argues that its texts were not "telephone solicitations" for purposes of a DNCR claim, because the communication did not "encourage the purchase of commercially available goods or services." *Id*. at 11 (citing 47 C.F.R. § 64.1200(f)(15)). Lido Labs argues that Walker-Schaut's conclusory factual allegations amount to "speculation regarding the purpose of the calls" and that they are an "impermissible legal conclusion," not a plausibly pled claim. Dkt. 13 at 11 (citing *Iqbal*, 566 at 678).

In response to Lido Labs' first argument, Walker-Schaut correctly contends that the TCPA has always included the term "message" in its definition of the term "telephone solicitation." Dkt. 16 at 8 (citing 47 U.S.C. § 227(a)(4)). She accurately asserts that the FCC's 2023 Rulemaking process expressly explained that it was "clarifying"—not expanding—and acknowledged that its effort was to "codify the National DNC Registry's existing protections to text messages." *Id*. at 9 (citing *In Re: Targeting and Eliminating Unlawful Text Messages*, Second Report and Order, 2023 WL 8826682, at *7, ¶ 26).

1     Walker-Schaut also correctly contends that for a decade, courts have consistently held that text messages are "telephone solicitations" under the TCPA. *Id*. at 8 (collecting cases). And Lido Labs has cited no authority supporting its claim that text messages were not TCPA "telephone solicitations" until the FCC's November 2023 "clarification." Its motion to dismiss Walker-Schaut's DNCR claim on this basis is **DENIED**.

    Lido Labs' second DNCR argument—that its text messages did not encourage or promote the purchase of commercially available goods or services—is essentially a repeat of its CEMA argument, rejected above. The TCPA version of its argument fails for the same reasons. Walker-Schaut has plausibly alleged that one purpose of the texts was to promote the future sale of various commercial services, including insurance, debt relief, tax relief, legal representation, and personal and auto loans. This is sufficient under the TCPA and Rule 12(b)(6). Lido Labs' motion to dismiss Walker-Schaut's DNCR claim on this basis is **DENIED**.

### C.   Walker-Schaut has plausibly pled a "failure to identify" claim.

    Lido Labs argues that Walker-Schaut's TCPA "failure to identify" claim is fatally flawed for two reasons. First, it argues the TCPA regulation's identification provision, 47 C.F.R. § 64.1200(d)(4)), applies *only* to "artificial or pre-recorded telephone voice calls," and that a text message is neither. Dkt. 13 at 12 (citing *Trim v. Reward Zone USA, Inc.*, 76 F.4th 1157, 1163 (9th Cir. 2023)).[3] Second, it argues there is in any event no private

---

[3] *Trim* held only, and unremarkably, that a text message is not an artificial or pre-recorded telephone voice call. *Trim*, 76 F.4th at 1163. It did not address whether a text message is a "call for telemarketing purposes to a residential telephone subscriber[.]"

right of action to enforce 47 U.S.C. § 227(d)'s "technical and procedural" standards. *Id*. at 13–14. It argues that 47 C.F.R. § 64.1200(d) was promulgated under § 227(d), and that the FCC has exclusive authority to enforce it. *Id*.

Walker-Schaut argues that Lido Labs' first contention is "patently false." Dkt. 16 at 10. The FCC revised 47 C.F.R. § 64.1200(d) in July 2023, to *add* language prohibiting "any artificial or prerecorded-voice telephone call pursuant to an exemption under paragraphs (a)(3)(ii) through (v) of this section," but as Walker-Schaut argues, the regulation continued to prohibit "any call for telemarketing purposes to a residential telephone subscriber[.]" *Id*. at 11 (citing the prior and current versions of 47 C.F.R. § 64.1200(d)). She thus demonstrates that § 64.1200(d)'s prohibitions are not limited to artificial or pre-recorded voice calls.[4]

Furthermore, Walker-Schaut argues and demonstrates (as discussed above) that the FCC's recent 64 C.F.R. § 1200(d) rulemaking is intended to clarify that the TCPA applies to text messages. Dkt. 16 at 11 (citing *In Re: Targeting and Eliminating Unlawful Text Messages*, Second Report and Order, Appendix B, 2023 WL 8826682, at *31)).

Lido Labs' motion to dismiss Walker-Schaut's "failure to identify" claim based on its claim that § 64.1200(d)(4) applies only to artificial or pre-recorded calls, and therefore not to text messages, is **DENIED**.

---

[4] Lido Labs' Reply asserts that Walker-Schaut conceded its motion regarding the lack of "artificial or pre-recorded calls" allegations, by failing to respond to it. Dkt. 23 at 10. This assertion is misplaced. She did respond to it, by pointing out that the regulation has always applied to "any call for telemarketing purposes to a residential telephone subscriber[.]" She did not "concede" Lido Labs' argument; she demonstrated it was not a viable defense to her claim.

ORDER - 10

Lido Labs also argues that, unlike regulations promulgated under 47 U.S.C. § 227(c), FCC regulations under § 227(d)'s "technical and procedural" standards do not provide a private right of action. It argues that 47 C.F.R. § 64.1200(d) was promulgated under §227(d), and that it therefore includes no private right of action. Dkt. 13 at 14 (citing *Barrett v. Vivint, Inc.*, No. 2:19-cv-00568-DBB-CMR, 2020 WL 2558231, at *6 (D. Utah May 20, 2020); and *Charvat v. NMP, LLC*, 656 F.3d 440, 443–44 (6th Cir. 2011)).

Neither case supports this conclusion. In *Barrett*, the Utah District Court stated that TCPA subsection § 227(d) "does not create an associated private right of action." 2020 WL 2558231, at *6. But it concluded that 47 C.F.R. § 64.1200(d) was promulgated under § 227(c) (meaning it does include an associated private right of action), not under § 227(d) (meaning it would not). It denied the defendant's motion to dismiss on this basis. *Barrett*, 2020 WL 2558231 at *7.

Walker-Schaut argues that courts addressing this issue have consistently concluded that 47 C.F.R. § 64.1200(d), including (d)(4)'s requirement that the caller identify him or herself, was promulgated under 47 U.S.C. § 227(c), and therefore that it includes a private right of action under § 227(c)(5). Dkt. 16 at 12–13 (citing *Charvat*, 656 F.3d 440; *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1265 (11th Cir. 2019); *Shelton v. Fast Advance Funding, LLC*, 805 F. App'x 156, 157 (3d Cir. 2020); *Callier v. Debt Mediators, LLC*, No. EP-21-CV-278-DB, 2022 WL 1423622, at *3 (W.D. Tex. May 5, 2022)). She acknowledges there are scattered decisions going the other way, but argues

they are not binding or persuasive, and that they are contrary to § 64.1200(d)'s history. Dkt. 16 at 14.

Walker-Schaut also demonstrates that Lido Labs' motion materially misquotes *Charvat*. Dkt. 16 at 16 (citing Dkt. 13 at 14). Lido Labs asserts that *Charvat* held that "[t]echnical and procedural standards specific to automated calls . . . included in § 227(d) and [its] accompanying regulation 47 C.F.R. § 64.1200[**(d)(4)**)] . . . do not provide a private right of action or a statutory-damages provision." Dkt. 13 at 14 (citing *Charvat*, 656 F.3d at 449) (emphasis added). But the accurate quote lends no support for Lido Labs' position:

> Technical and procedural standards specific to automated calls are included in § 227(d) and *accompanying regulation* 47 C.F.R. *§ 64.1200(b)*, which do not provide a private right of action or a statutory-damages provision.

*Charvat*, 656 F.3d at 449 (emphasis added).

Lido Labs' Reply abandons its reliance on *Charvat* but does not explain its material alteration of that authority's holding. It continues to state that § 64.1200(d) was promulgated under § 227(d). Dkt. 23 at 8. It contends that Walker-Schaut's claim that the regulation was instead promulgated under § 227(c) is "wrong," and argues that Walker-Schaut's "out of circuit decisions" (including *Charvat*) are "not binding and should not be followed." *Id*. at 8 n.3. It does not, however, cite an in-Circuit case supporting its position.

Lido Labs' Reply also argues that 47 C.F.R. § 64.1200(d)'s prohibition on calls "for telemarketing purposes to a residential telephone subscriber" does not apply to cell

phones. Dkt. 23 at 10 (citing unpublished District Court opinions in Texas and Tennessee).

There are two glaring deficiencies in this new argument. First, it was raised for the first time in reply, rather than in its motion, depriving Walker-Schaut an opportunity to respond to it. *See Docusign, Inc. v. Sertifi, Inc.*, 468 F. Supp. 2d 1305, 1307 (W.D. Wash. 2006) ("It is well established that new arguments and evidence presented for the first time in Reply are waived") (citing *United States v. Patterson*, 230 F.3d 1168, 1172 (9th Cir. 2000)); *Thompson v. Comm'r,* 631 F.2d 642, 649 (9th Cir. 1980)).

Second, it is well-settled in this Circuit, at least, that a cell phone can be a residential telephone for TCPA purposes. *See*, *e.g.*, *Chennette v. Porch, Inc.*, 50 F.4th 1217, 1223 (9th Cir. 2022). *See also Barr v. American Ass'n of Political Consultants, Inc.*, 591 U.S. \_\_\_, 140 S. Ct. 2335, 2343 (2020) ("TCPA[] generally prohibits robocalls to cell phones and home phones."). Lido Labs' citation to out-of-Circuit and out-of-date authority suggesting otherwise is unhelpful.

Lido Labs' motion to dismiss on these bases is **DENIED**.

**D.     Walker-Schaut has plausibly pled an ATDS claim.**

Finally, Lido Labs argues that Walker-Schaut's ATDS claim is implausible and must be dismissed with prejudice because her allegation that the texts were sent using an ATDS is conclusory; she has pled no facts supporting that conclusion. Dkt. 13 at 14–15 (citing *Borden v. eFinancial LLC*, 53 F.4th 1230, 1231–32 (9th Cir. 2022); *Brickman v. United States*, 56 F.4th 688 (9th Cir. 2022)).

phones. Dkt. 23 at 10 (citing unpublished District Court opinions in Texas and Tennessee).

There are two glaring deficiencies in this new argument. First, it was raised for the first time in reply, rather than in its motion, depriving Walker-Schaut an opportunity to respond to it. *See Docusign, Inc. v. Sertifi, Inc.*, 468 F. Supp. 2d 1305, 1307 (W.D. Wash. 2006) ("It is well established that new arguments and evidence presented for the first time in Reply are waived") (citing *United States v. Patterson*, 230 F.3d 1168, 1172 (9th Cir. 2000)); *Thompson v. Comm'r,* 631 F.2d 642, 649 (9th Cir. 1980)).

Second, it is well-settled in this Circuit, at least, that a cell phone can be a residential telephone for TCPA purposes. *See*, *e.g.*, *Chennette v. Porch, Inc.*, 50 F.4th 1217, 1223 (9th Cir. 2022). *See also Barr v. American Ass'n of Political Consultants, Inc.*, 591 U.S. \_\_\_, 140 S. Ct. 2335, 2343 (2020) ("TCPA[] generally prohibits robocalls to cell phones and home phones."). Lido Labs' citation to out-of-Circuit and out-of-date authority suggesting otherwise is unhelpful.

Lido Labs' motion to dismiss on these bases is **DENIED**.

**D.     Walker-Schaut has plausibly pled an ATDS claim.**

Finally, Lido Labs argues that Walker-Schaut's ATDS claim is implausible and must be dismissed with prejudice because her allegation that the texts were sent using an ATDS is conclusory; she has pled no facts supporting that conclusion. Dkt. 13 at 14–15 (citing *Borden v. eFinancial LLC*, 53 F.4th 1230, 1231–32 (9th Cir. 2022); *Brickman v. United States*, 56 F.4th 688 (9th Cir. 2022)).

*Borden* held that a TCPA plaintiff must allege the defendant caller used an ATDS to *generate telephone numbers*, and that it is not sufficient to allege that an auto dialer was used to randomly call stored phone numbers that had not been randomly or sequentially generated in the fist instance. 53 F.4th at 1234 (citing *Facebook, Inc. v. Duguid*, 592 U.S. 395 (2021)). Using an auto dialer to select which already-obtained-and-stored numbers to call does not violate the TCPA. *Id*.

*Brickman* similarly held that a plaintiff alleging the caller used an ATDS (specifically, a "random or sequential number generator" (RSNG)) to select *which* stored phone numbers to text, had not adequately pled that the caller used an RSNG to *generate* those phone numbers. 56 F.4th at 690 (citing *Duguid*, 592 U.S. 395).

Walker-Schaut argues that because she never provided her cell phone number to Lido Labs, she has plausibly alleged that Lido Labs used an ATDS to generate her phone number. Dkt. 16 at 17 (citing *Brickman v. Facebook, Inc.*, No C16-0751 WHO, 2021 WL 4198512, at *3 (N.D. Cal. Sept. 15, 2021)). *Brickman* explained that whether the caller impermissibly used an ATDS to generate the plaintiff's phone number is generally a summary judgment question, not a pleading issue, but that because Brickman conceded he already provided his phone number to Facebook, he had not plausibly alleged the improper use of an ATDS:

> [S]ome courts have considered the determination of whether a plaintiff has plausibly shown the use of an ATDS covered by *Duguid* to be more appropriately resolved on summary judgment than at the pleading stage. But in many of those cases, the plaintiffs alleged they had *never* provided defendant with their phone numbers in the first place, making it at least plausible that a prohibited number generator had been used to produce or store the numbers called.

*Brickman*, 2021 WL 4198512, at *3. This decision was affirmed in *Brickman v. United States*, above.

As Walker-Schaut points out, other cases have similarly concluded that the precise source of the number and the text is a fact often within the defendant caller's exclusive possession, and that it is difficult to plead that factual question with specificity absent formal discovery. Dkt. 16 at 18 (collecting cases).

Unlike Brickman, Walker-Schaut alleges that she never provided Lido Labs her phone number, making it plausible that Lido Labs used an ATDS to generate her phone number. Dkt. 1 at 14. Lido Labs' Reply argument that she must allege other facts—such as that she heard a "pause" before the caller spoke to her, or that the calls all followed the same script,[5] Dkt. 23 at 11, does not make sense in the context of a text message. And they too are raised for the first time on Reply.

Lido Labs' motion to dismiss Walker-Schaut's ATDS claim as implausible or conclusory is **DENIED**. The actual source of its texts is a matter for a summary judgment motion.

***

The Court's Discovery Stay, Dkt. 27, is **LIFTED**. The Court will not "trifurcate" discovery. Lido Labs may re-note its motion to bifurcate discovery, Dkt. 12, and file a short (six pages) supplemental brief in support of it, in light of this Order. Walker-Schaut may file a similarly short Response within ten days of Lido Labs' supplemental brief, if

---

[5] The texts described in Walker-Schaut's complaint all follow the same format.

any. Alternatively, and perhaps preferably, Lido Labs may file in the normal course a new motion regarding the scope and order of discovery, addressing the case's landscape after this Order.

Many of Lido Labs' arguments in support of its motion to strike class allegations, Dkt. 15, have been rejected in this Order. As previously filed, that motion is **DENIED**, without prejudice to re-file a revised motion addressing the viability of class allegations after this Order.

**IT IS SO ORDERED**.

Dated this 24th day of May, 2024.

BENJAMIN H. SETTLE
United States District Judge

ORDER - 16