UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CHRISTY WALKER-SCHAUT,

Plaintiff,

v.

LIDO LABS HOLDING COMPANY,

Defendant.

CASE NO. C23-5944 BHS

ORDER

This matter is before the Court on Plaintiff Christy Walker-Schaut's motion to dismiss Defendant Lido Labs Holding Company's fraud counterclaim. Dkt. 33. Because Lido fails to state a plausible fraud counterclaim, the motion is granted.

Walker-Schaut sued Lido, alleging that it violated both the Washington Consumer Protection Act (CPA) and the federal Telephone Consumer Protection Act (TCPA) by sending her at least 65 unwanted and unsolicited text messages. Dkt. 30, ¶¶ 14, 40–55.

Lido answered, asserting a counterclaim for fraud. Dkt. 32, ¶¶ 8–18. It concedes that it sent text messages to Walker-Schaut's telephone number but alleges that Walker-Schaut "submitted opt in information so that she could receive text messages at [her] phone number." *Id.* ¶ 9. Lido claims that Walker-Schaut entered her name, "Christy

Walker-Schaut," and telephone number on a website that "contains a section for website users seeking financial assistance." *Id.* ¶ 14. It asserts that "[t]he page of this website in to which the information was provided contains clear and unambiguous language explaining that by clicking the button 'I agree', the website user is providing express written consent to be contacted regarding Lido's services." *Id.* ¶ 15.

Lido alleges that Walker-Schaut's "representation that she was interested in services from Lido was knowingly false" and that she "submitted the opt-in information with the sole intent of manufacturing a TCPA claim against Lido." Dkt. 32, ¶¶ 10–11. Lido claims that "[t]hese fraudulent misrepresentations, were in fact, relied upon [by] Lido" because it sent text messages to the provided telephone number. *Id.* ¶¶ 16–17. Lido alleges that it "has been damaged by Plaintiff's fraudulent action in the form of ongoing fees  and costs, prior expenditures, reputational damage, business disruption, and the costs of investigation and defense." *Id.* ¶ 18.

Walker-Schaut moves to dismiss Lido's fraud counterclaim, asserting that Lido "fail[s] to plead that it was explicitly named as a party to the consent agreement," which "renders [its] claim insufficient and fundamentally flawed." Dkt. 33 at 1. She also contends that "Lido's allegation that Walker-Schaut fraudulently induced it to send text messages is based on speculative assertions that lack the requisite elements to support a fraud claim under Washington law." *Id.* at 1–2. She finally argues that "even taking the allegations at face value, the boilerplate 'damages' amount to little more than mere speculation." *Id.* at 2.

Lido responds that Walker-Schaut "submitted opt in information on the website https://bcd.us-unemployment-resources.com/tc.php so that she could receive text massages at [her] phone number" and that "[b]y doing so, Plaintiff represented 'that she was interested in services from Lido.'" Dkt. 34 at 5 (citing Dkt. 32, ¶¶ 9, 11, 13). Lido asserts that "this representation was knowingly false and [Walker-Schaut] 'submitted the opt-in information with the sole intent of manufacturing a TCPA claim against Lido.'" Dkt. 34 at 5 (citing Dkt. 32, ¶¶ 10–11). Lido contends that it relied on Walker-Schaut's consent in deciding to send her the disputed text messages. Dkt. 34 at 6–7. Lido finally asserts that need not "identify its damages with 'quantifiable loss'" and that its allegation of damages "is sufficient to put Plaintiff on notice so that she can make 'an informed decision of the risks and benefits of continued litigation.'" Dkt. 34 at 8 (quoting *Kathryn Learner Fam. Trust v. Wilson*, 183 Wn. App. 494, 497 (2014)).

Dismissal under Fed. R. Civ. P. 12(b)(6) may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A pleading must allege facts to state a claim for relief that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Although the court must accept as true the pleading's well-pleaded facts, conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper 12(b)(6) motion to dismiss. *Vasquez v. Los Angeles Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007); *Sprewell v. Golden State Warriors*,

266 F.3d 979, 988 (9th Cir. 2001). "A [party]'s obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up). This requires a party to plead "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

On a 12(b)(6) motion, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990). However, where the facts are not in dispute, and the sole issue is whether there is liability as a matter of substantive law, the court may deny leave to amend. *Albrecht v. Lund*, 845 F.2d 193, 195–96 (9th Cir. 1988).

Rule 9(b) additionally requires that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake," but that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." This rule "demands that the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (internal quotation marks omitted) (quoting *Bly–Magee v. California,* 236 F.3d 1014, 1019 (9th Cir.2001)). To this end, "'[a]verments of fraud must be accompanied by "the who, what, when, where, and

how' of the misconduct charged.'"'" *Kearns*, 567 F.3d at 1124 (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)). In addition to providing a party adequate notice of the charge, Rule 9(b) serves "to protect those whose reputation would be harmed as a result of being subject to fraud charges" and "'to prohibit [] [claimants] from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis.'" *Kearns*, 567 F.3d at 1125 (quoting *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1405 (9th Cir. 1996)).

In Washington, "[t]here are nine essential elements of fraud, all of which must be established by clear, cogent, and convincing evidence." *Elcon Const., Inc. v. E. Washington Univ.*, 174 Wn.2d 157, 166 (2012). These elements are:

> (1) a representation of existing fact, (2) its materiality, (3) its falsity, (4) the speaker's knowledge of its falsity, (5) the speaker's intent that it be acted upon by the person to whom it is made, (6) ignorance of its falsity on the part of the person to whom the representation is addressed, (7) the latter's reliance on the truth of the representation, (8) the right to rely upon it, and (9) consequent damage.

*Id.*

Lido fails to plausibly allege that Walker-Schaut consented to receiving text messages from Lido. The hyperlink that Lido cites in support of its counterclaim (https://bcd.us-unemployment-resources.com/tc.php) is to the terms and conditions of a website entitled, "US UNEMPLOYMENT RESOURCES." This website is comprised of five webpages, and the services provided by this website are not entirely clear from a review of these webpages.

The terms and conditions of this website state that the website functions to share promotions and offers from its "advertisers," although it does not describe who those advertisers are or what services they provide:

> Our Website is a social networking-based website dedicated to sharing the promotions and offers of our advertisers with members of our community. . . . We make regular blog postings advising users of new promotions and offers, and then we provide the tools by which users can accept an offer or promotion from an advertiser, or share information about such promotion or offer with members of their third party social networks.

https://bcd.us-unemployment-resources.com/tc.php.

Although the website states that its operator "make[s] regular blog postings advising users of new promotions and offers," there is no section of the website devoted to blog posts.

The terms and conditions also provide that users may "sign up" on the website and that, by doing so, they will be able to receive undisclosed "samples or freebies" if the user "specifically sign[s] up" to receive those "samples or freebies":

> - SIGN-UP
>
> Registration is not required to use our Website, but you will only be able to receive samples or freebies if you specifically sign up to receive them. If you elect to sign up, you will be asked to provide your name, email address, address, phone number, and date of birth. In an effort to provide you with the most relevant samples or freebies available, you may also be asked to provide other information including but not limited to your relationship status, whether or not you ever use coupons, health matters, and your employment status.

https://bcd.us-unemployment-resources.com/tc.php.

Nothing in this paragraph suggests that, by "signing up," a user agrees to be contacted by any company, including Lido, about its services.

The website further contains the following webpage through which users may provide their name, phone number, and email address:

US UNEMPLOYMENT RESOURCES

Contact Us

Subject:

Select One

First Name:

Last Name:

Phone:

XXX - XXX - XXXX

Email:

Message:

SUBMIT

Terms & Conditions | Privacy Policy | Privacy Notice | Contact Us | Unsubscribe | CA Consumers: Do Not Sell My Info

https://bcd.us-unemployment-resources.com/contact.php.

Notably, however, this webpage appears to be only a means through which users may contact the website operator. The top of this webpage states, "Contact Us." And contrary to Lido's assertion otherwise, the "button" on this website does not state, "I

agree," Dkt. 32, ¶ 15, it states "SUBMIT." This webpage accordingly does not appear to be a means through which users may expressly agree to receive messages from Lido. In fact, nowhere on the website, including in its terms and conditions, is Lido mentioned or its "services" described. Lido accordingly fails to plausibly demonstrate that Walker-Schaut consented to receiving text messages from Lido about Lido's services, or that she was "interested in services from Lido."[1] Dkt. 32, ¶ 11.

In any event, even if Walker-Schaut somehow consented to receiving the disputed text messages from Lido, Lido fails to demonstrate how the mere act of consenting amounts to a false representation. Walker-Schaut either consented to receiving the disputed messages, or she did not so consent. Lido alleges that she consented to receiving the messages by entering on the website her telephone number and name, "Christy Walker-Schaut," and "by clicking on the button 'I agree'" to "clear and unambiguous language explaining that . . . the website user is providing express written consent to be contacted regarding Lido's services." Dkt. 32, ¶ 15. Even if the Court assumed the truth of this allegation, Lido would plausibly demonstrate only that Walker-Schaut actually wanted to receive Lido's text messages, regardless of whether she also intended to sue Lido for sending them to her. Her consent to receiving these messages would accordingly be a true—not false—representation.

---

[1] To the extent Lido asserts that Walker-Schaut represented that she was "interested in services from Lido," Dkt. 32, ¶ 11, Lido not only fails to plausibly allege that Walker-Schaut even made any such representation, but also that Walker-Schaut's "interest" in its services was material to its decision to send the disputed text messages or that it relied on Walker-Schaut's "interest," as opposed to her mere consent, in sending the messages.

Lido suggests (although does not directly argue) that, if Walker-Schaut consented to receiving the disputed text messages, then she impliedly promised to not sue Lido in the future for sending her text messages in violation of the TCPA. Yet it is well established in Washington that "[a] promise of future performance is not a representation of an *existing* fact and will not support a fraud claim." *W. Coast, Inc. v. Snohomish Cnty.*, 112 Wn. App. 200, 206 (2002) (emphasis added). To the extent that Lido's fraud counterclaim is based on such a promise, it fails.

Lido also fails to plausibly allege damages. Lido claims that it "has been damaged by Plaintiff's fraudulent action in the form of ongoing fees and costs, prior expenditures, reputational damage, business disruption, and the costs of investigation and defense." Dkt. 32, ¶ 18. But in Washington, attorney fees and costs are not recoverable unless a contract, statute, or ground in equity expressly authorizes their recovery. *See City of Seattle v. Hammon*, 131 Wn. App. 801, 805 (2006) ("'Attorney fees are recoverable only when authorized by a private agreement of the parties, by statute or a recognized ground of equity.'" (quoting *State v. Keeney,* 112 Wn.2d 140, 142 (1989)); *Johnson v. Horizon Fisheries, LLC*, 148 Wn. App. 628, 633 (2009) ("Under the 'American rule' followed in Washington, litigation costs are only recoverable when authorized by statute, rule, or case law."). Lido Labs fails to cite any authority permitting it to recover attorney fees and costs under these circumstances.

To the extent Lido alleges that it has suffered damages "in the form of . . . prior expenditures, reputational damage, business disruption, and the costs of investigation" independent of attorney fees and litigation costs, Dkt. 32, ¶ 18, it does not state a

plausible claim for damages. These vague and conclusory assertions are not supported by any specific factual allegations explaining exactly *what* these damages are in the context of this case and *how* Walker-Schaut's conduct caused them. This is plainly insufficient to survive a Rule 12(b)(6) motion to dismiss. *See, e.g., Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555; *Vasquez*, 487 F.3d at 1249.

Lido cites two unpublished orders from this District in support of its fraud counterclaim. The first is *Barton v. Delfgauw*, No. 3:21-cv-05610-JRC, 2021 WL 9869662 (W.D. Wash., Nov. 15, 2021), which denied a pro se plaintiff's motion to dismiss fraud counterclaims under similar—yet distinct—circumstances. Dkt. 34 at 4–6. In *Delfgauw*, the plaintiff asserted TCPA claims, alleging that the defendants communicated with him by telephone without his consent and while his phone number was registered on the national "Do-Not-Call Registry." 2021 WL 9869662, at *1. The defendants filed counterclaims for fraud and fraud by non-disclosure, asserting that the "plaintiff opted in to receive communication from defendants or one of their affiliates *by using a fake name*" and that, "[b]y doing so, . . . induced them or their affiliates to believe he wanted to be contacted." *Id.* at 2 (emphasis added). They claimed "that plaintiff 'intentionally concealed from or failed to disclose' to defendants that he did not wish to be contacted by them" and "waited to be contacted so that he could file a lawsuit alleging violations of the TCPA." *Id.*

The plaintiff moved to dismiss these counterclaims for failing to satisfy Rule 9(b)'s particularity requirement, and the court denied the motion. *Delfgauw*, 2021 WL 9869662, at *2. The court reasoned—without mentioning or analyzing the elements of

fraud in Washington—that the defendants' "allegations are sufficient to satisfy Rule 9(b) and put plaintiff on notice of the particular misconduct alleged so that he may defend himself." *Id.*

Lido's reliance on *Delfgauw* is unpersuasive for several reasons. Most significantly, the defendants in *Delfgauw* alleged that the "plaintiff opted in to receive communication from *defendants or one of their affiliates*." 2021 WL 9869662, at *2 (emphasis added). As explained, Lido fails to plausibly establish that Walker-Schaut consented to receiving communication from Lido about its services. Furthermore, unlike the defendants in *Delfgauw*, Lido does not allege that Walker-Schaut used a fake name to induce it to believe that she wanted to be contacted while her actual name was on the national "Do-Not-Call Registry." *Id.* at *1. It is only in this regard that the plaintiff in *Delfgauw* made a false representation. To the extent *Delfgauw* suggests that the plaintiff also made a false representation by "'intentionally conceal[ing] from or fail[ing] to disclose' to defendants that he did not wish to be contacted by them," *id.* at *2, the Court respectfully disagrees with this characterization. By affirmatively consenting to receive the messages—even through a fake name—the plaintiff in *Delfgauw* necessarily "wish[ed] to be contacted by" the defendants. *Id.* His act of consenting itself did not amount to a false representation. Finally, *Delfgauw* does not analyze whether the defendants therein stated a plausible claim for damages. *See id.* at 1–2. As explained, Lido's fraud counterclaim fails in this respect.

Lido also cites *Barton v. Alleviate Tax LLC*, No. 3:23-CV-6071-DGE-RJB, 2024 WL 3027434 (W.D. Wash. June 17, 2024), which denied the same pro se plaintiff's

motion to dismiss a defendant's fraud counterclaim in a different TCPA case. Dkt. 34 at 6. This one-page order contains virtually no analysis and does not discuss the facts of that case or any of the specific factual allegations underlying the defendant's fraud counterclaim. *See id.* However, the docket in that case demonstrates that the defendant, who was represented by the same law firm that represents Lido here, alleged that the plaintiff used "dubious" names when consenting to receive the messages underlying his TCPA claims. Dkt. 24, ¶¶ 18–19 and Dkt. 34 at 2 in *Alleviate Tax*, No. C23-6071-DGE-RJB.[2] Again, Lido does not claim that Walker-Schaut used a fake or "dubious" name to consent to receiving the disputed messages. To the contrary, it alleges that she used her actual name, "Christy Walker-Schaut." Dkt. 32, ¶ 14. The defendant in *Alleviate Tax*, like Lido, sought damages for "the cost of defending litigation instigated by Plaintiff under false pretenses." Dkt. 24, ¶ 20 in No. C23-6071-DGE-RJB. Insofar as the *Alleviate Tax* order concludes that such damages were properly sought through a fraud claim, the Court respectfully disagrees with it. *See* 2024 WL 3027434, at *1. Lido's reliance on *Alleviate Tax* is unpersuasive.

For these reasons, Lido fails to state a plausible fraud counterclaim. Walker-Schaut's motion to dismiss Lido's fraud counterclaim, Dkt. 33, is accordingly **GRANTED**, and that counterclaim is **DISMISSED with prejudice**.

**IT IS SO ORDERED**.

//

//

[2] The Court takes judicial notice of these documents. *See* Fed. R. Evid. 201.

Dated this 26th day of September, 2024.

BENJAMIN H. SETTLE
United States District Judge